## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DONTE ROYES WILLIAMS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 04-299 |
| v. | ) Judge Terrence F. McVerry/ |
| | ) Magistrate Judge Francis |
| KUSNAIRS BAR AND TAVERN | ) X. Caiazza |
| RANDALL RUSIA, MARK RUSIA, | ) |
| COMMUNITY ACTION INC., OF | ) |
| FAYETTE COUNTY, | ) Doc. Nos. 67, 119 and 122 |
| | ) |
| Defendants. | ) |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I.   RECOMMENDATION

It is respectfully recommended that the Motion for Summary
Judgment filed by the Defendant Community Action, Inc. of Fayette
County be granted with respect to all remaining claims. It is
also recommended that the Motion for Summary Judgment filed by
the Defendant Mark Rusia be granted with respect to all remaining
claims. Finally, it is recommended that the Motion for Summary
Judgment filed by the Defendant Randall Rusia be granted with
respect to the state law defamation claim and the conspiracy
claim based upon the provisions of 42 U.S.C. § 1985. Finally, the
Defendant Randall Rusia's Motion for Summary Judgment should be
denied with respect to the claims based upon the provisions of 42
U.S.C. §§ 1981 and 1982, the Landlord-Tenant Law, the Unfair
Trade Practices and Consumer Protection Law and the state law
contract claim.

1

## II. **REPORT**

### A. **Relevant Case History**

Donte R. Williams ("the Plaintiff" or "Williams") has commenced suit in federal court against three defendants; *i.e.*, the Fayette County Community Action Agency ("the FCCAA"), Mark Rusia and Randall Rusia.[1] The only remaining claims against FCCAA are state law claims for: 1) breach of contract and 2) violating the Pennsylvania Unfair Trade Practices and Consumer Protection law. 73 Pa. Cons. Stat. §§ 201-1 - 201-9.2. These same two claims remain viable against Mark Rusia and Randall Rusia as well as the following claims: 1) purported violations of 42 U.S.C. § § 3604, 3617, and 3631,[2] (collectively, "the Fair Housing Act causes of action"); 2) purported violations of 42 U.S.C. § 1981, 1982, and 1985[3] (collectively, "the Civil Rights causes of actions"); 3) a Landlord-Tenant Act claim; and 4) a defamation claim.

FCCAA has filed a Motion for Summary Judgment as have the Rusias. Parenthetically, by order filed September 9, 2004, the court denied Williams' Motion for Summary Judgment, without prejudice. He retained the right to re-file the motion should a previous Motion to Dismiss filed by FCCAA not be granted in all

---

1.Some of the Plaintiff's claims have already been dismissed. See Report and Recommendation (Doc. 89) and Memorandum Order (Doc. 94).

2. Doc. 63, Am. Compl. at ¶¶ 40-47.

3. Doc. 63, Am. Compl. at ¶¶ 48-51.

respects. FCCAA's Motion to Dismiss was not granted with respect
to all of the Plaintiff's claims; however, he never formally re-
filed a Motion for Summary Judgment. Nevertheless, both FCCAA and
the Rusias filed responses and briefs in opposition to Willaims'
summary judgment motion. Because the record is now developed
sufficiently, the court will rule on the Plaintiff's Motion for
Summary Judgment.

## B. Discussion

The Plaintiff is a African-American male, diagnosed with
paranoid schizophrenia, who was evicted from the City Mission
because he was "disrespectful toward City Mission staff – using
profanity toward staff member [and] then denying what was said to
staff." Doc. 136 at 13.[4]  Thereafter Williams sought the
assistance of FCCAA to help him obtain housing and/or rental
assistance. Doc. 121, at ¶ 5; Doc. 136, at 14.[5]  FCCAA contacted
Randall Rusia, who rented rooms above a tavern, and agreed to
provide one to Williams for $150.00 a month. Doc. 121, at ¶ 8;
Doc. 136 at 15. On July 5, 2001, Randall Rusia signed a form with
defendant FCCAA, agreeing to rent a room to the Plaintiff in
exchange for FCCAA paying one month's rent plus a security

---

4. Although in his deposition Williams repeats his claim that he did
not say anything disrespectful, his testimony does not create a
factual dispute because it is unrelated to a material issue. Doc. 125,
App. part 1 at 11; Pl.'s Dep. at 28 line 21.

5. All citations to specific pages of documents relate to the page
number generated by the computer for the digital documents found in
the upper right hand of the specific page.

deposit. Following several incidents, including one on July 25, 2001, Williams was advised that he would be evicted effective August 3, 2001. He was subsequently evicted on that date.

### 1) **FCCAA's Motion for Summary Judgment**

The Plaintiff's only remaining claims against FCCAA are for breach of contract and for violating the Pennsylvania Unfair Trade Practices And Consumer Protection Law. 73 Pa. Cons. Stat. § 201-1 - 201-9.2 ("the "CPL"). FCCAA moved for summary judgment arguing that no contract existed between it and Williams and that the Plaintiff failed to qualify under the CPL because he did not purchase goods or services from FCCAA.

#### a) Breach of Contract

The basis of the Plaintiff's breach of contract claim against FCCAA is not entirely clear from his Complaint. However, in his deposition he contends that FCCAA failed to enforce the rental agreement entered into with Randall Rusia. Doc. 125-1 at 42, Pl.'s Dep. at 151. To sustain a breach of contract action, a plaintiff has the burden to establish the terms of the contract and that the defendant breached those terms. Presbyterian Medical Center v. Budd, 832 A.2d 1066, 1070 (Pa. Super. 2003)("To support a claim for breach of contract, a plaintiff must plead: 1) the existence of a contract, including its essential terms; and 2) the breach of a duty imposed by the contract"). As pointed out by FCCAA in its Summary Judgment Motion and as confirmed by the

4

court in its independent evaluation of the record, there is no evidence -written or otherwise- showing that FCCAA assumed an obligation to enforce the "rental agreement" entered into by Randall Rusia and Williams. Doc. 120 at 7-9. Parenthetically, the Plaintiff's third party beneficiary argument lacks merit.[6] The evidence in this record only shows that FCCAA agreed to pay Williams' first month rent and nothing more. Significantly, there is no evidence in this record which shows that FCCAA agreed to assume any obligation whatsoever to enforce the purported contract.

      b) The Unfair Trade Practices and Consumer Protection Law

For Williams to maintain a private cause of action under the CPL, he must establish that he purchased or leased goods or services from FCCAA. Doc. 120 at 10. See also 73 Pa. Cons. Stat. § 201-9.2. It is Williams' burden to show that he purchased or leased goods from FCCAA. See Martino v. New Hampshire Ins. Co., 1990 WL 67223, *4 (E.D. Pa. May 18, 1990)(noting a plaintiff's burden to establish a claim under the statute). See also 73 Pa. Cons. Stat. § 201-2(4). That said, there is no evidence in this record which shows that the Plaintiff purchased or leased goods or services from FCCAA with respect to the room he rented from

---

6. The Plaintiff claims he was the third party beneficiary of the agreement between FCCAA and Randall Rusia. Even if Williams received a benefit from the agreement, there is no evidence supporting any *contractual* obligation on the part of FCCAA which runs to the Plaintiff.

Randall Rusia. The contrary is true. <u>See</u>, <u>e.g.</u>, Doc. 125 at 36 (a representative from FCCAA, Mr. Brogden, testified that Williams never gave anything of value to FCCAA). In fact, the Plaintiff himself admitted that he did not purchase any goods or services from FCCAA. Doc. 125-1 at 43, Pl.'s Dep. at 153. <u>See</u>, <u>e.g.</u>, <u>Katz v. Aetna Cas. & Sur. Co.</u>, 972 F.2d 53, 55 (3d Cir. 1992).

The Motion for Summary Judgment filed by FCCAA should be granted with respect to this claim.

### 2) <u>The Defendant Mark Rusia</u>

The Plaintiff has effectively conceded that Mark Rusia had no connection to the facts which serve as the basis of his cause of action. Doc. 125, App. 1 at 12, Dep. at 31-32; Doc. 125, App. 3 at 20. Williams relies on nothing more than speculation to tie Mark Rusia to his claims. Doc. 125-1 App. 1 at 49, Dep. at 178, lines 3-14. The evidence relied on by Williams to support his claim is insufficient. <u>See</u> <u>Hedberg v. Indiana Bell Tel. Co., Inc.</u>, 47 F.3d 928, 932 (7th Cir. 1995) (speculation does not create a genuine issue of fact); <u>see</u> <u>also</u> <u>Adler v. Wal-Mart Stores, Inc.</u>, 144 F.3d 664, 674 (10th Cir. 1998).

### 3) <u>Defendant Randall Rusia</u>

Defendant Randall Rusia has moved for summary judgment as to all the claims against him. They will be addressed in order.

#### a) <u>Breach of Contract</u>

Randall Rusia argues that Williams was evicted after thirty

6

days because he engaged in disruptive behavior. Doc. 122-1 at 6-7. He also claims that the lease was for a thirty day period and he choose not to renew it after the initial period. Id. at 6, ¶ 23.[7] The Plaintiff points out[8], however, that the rental verification form entered into by Randall Rusia and FCCAA stated that he (Rusia) "agree[d] not to evict the tenant for thirty (30) calendar days **from the date of the issued check.**" Doc. 136-1 at 15 (emphasis added). Relatedly, Williams points out that the check was dated August 29, 2001. Consequently, there is evidence in this record which shows that in this instance Williams was a beneficiary of a contract entered into by Randal Rusia and FCCAA. Stated more specifically, pursuant to the terms of that agreement the Plaintiff could not be evicted until thirty days after August 29, 2001. With respect to this claim, there exists a material issue of fact.

b) The Unfair Trade Practices and Consumer Protection Law

Next, Randall Rusia moves for summary judgment on the Pennsylvania Consumer Protection Law claim based on the same

---

7. In his Concise Statement of Material Facts, Randall Rusia states that "[a]s a result, on July 3, 2001, Mr. Williams and Mr. Kusniar [i.e., Randall Rusia], through the auspices of FCCAA, and through payment by the FCCAA, agreed that Plaintiff could live in one (1) room of the boarding house for a period of thirty (30) days." Doc. 124, ¶ 7. However, Randall cites no record support for his statement and the memorialization of the agreement, which apparently appears in the Rental Verification form, Doc. 136-1 at 15, states the terms of the rental as being that Williams would not be evicted from the room for thirty days from the date of the issued check. Doc. 136-1 at 15.

8. Doc. 136-1 at ¶ 8.

argument raised by FCCAA, *i.e.*, the Plaintiff did not lease or purchase goods or services from Randall Rusia. See Doc. 122-1. The deposition testimony of the Plaintiff shows, however, that Williams personally paid Randall Rusia $150.00 in rent in addition to the rental payment made by FCCAA. Doc. 125-1 at 48, Pl.'s Dep. at 173-176. Furthermore, the separated excerpts provided by FCCAA from Randall Rusia's own deposition testimony confirms that Williams paid rent money directly to him. See Doc. 121-2 at 58, Randall Rusia's Dep. at 18, line 25 and Doc. 131-2 at 17, Randall Rusia's 's Dep. at 19 lines 1-3. ("Mr. Williams gave me $125"). This testimony shows, at the least, a genuine issue of material fact with respect to the question of whether Williams leased services from Randall Rusia. Accordingly, Randall Rusia's summary judgment motion should be denied with respect to this claim.

Randall Rusia also argues that even if Williams purchased leased services from him, the Plaintiff has not shown that he engaged in any activity forbidden by the Consumer Protection Law. Doc. 122-1 at 31. This argument lacks merit. See 73 Pa. Cons. Stat. § 201-2(4)(xiv) which provides that "[f]ailing to comply with the terms of any written guarantee or warranty given to the buyer at, prior to or after a contract for the purchase of goods or services is made" constitutes a violation of the CPA. Here, Williams argues that Randall guaranteed not to evict him for a

period of thirty days measuring from the date appearing on the
check. Consequently, summary judgment would not be appropriate
with respect to this claim because there exists a material issue
of fact.

### c) The Civil Rights Causes of Action

Randall Rusia moves for summary judgment on the Civil Rights
causes of actions, i.e., claims based on the provisions of 42
U.S.C. §§ 1981,[9] 1982,[10] and 1985.[11]  The only defense Randall
raises to these claims are that:

---

9. Under § 1981, a plaintiff must prove that: (1) he or she is member
of racial minority; (2) there exists an intent to discriminate on the
basis of race; and (3) discrimination was connected to one or more of
the activities enumerated in statute. Mian v. Donaldson, Lufkin &
Jenrette Securities Corp., 7 F.3d 1085 (2d Cir. 1993).Among the
activities enumerated in the statute are "to make and enforce
contracts" which is defined broadly to include "the making,
performance, modification, and termination of contracts, and the
enjoyment of all benefits, privileges, terms, and conditions of the
contractual relationship." 42 U.S.C. § 1981(b).

10. "The prima facie elements of a § 1982 case parallel those of a §
1981 case and require a plaintiff to show: (1) membership in a
protected class; (2) discriminatory intent on the part of the
defendant and (3) interference with the rights or benefits connected
with the ownership of property."  Daniel v. Dilliard's Inc., 373 F.3d
885 (8th Cir. 2004).

11. To prevail on a civil rights conspiracy claim under Section
1985(3), which is the only applicable subsection here, a plaintiff
must prove the existence of: (1) a conspiracy; (2) for the purpose of
depriving, either directly or indirectly, any person or class of
persons of equal protection of laws, or of equal privileges and
immunities under laws; 3) some act in furtherance of conspiracy; and
(4) an injury to the plaintiff's person or property or the plaintiff
must show that he or she has been deprived of a right or privilege of
citizenship; more specifically, the second element requires a showing
of some class-based, invidiously discriminatory animus behind the
conspirators' action. Lucero v. Operation Rescue of Birmingham, 954
F.2d 624, 627-28 (11th Cir. 1992).

36.   The Plaintiff has not testified under oath or established through his pleadings that his civil rights have been violated in any manner whatsoever.

37.   The Plaintiff was entitled to reside in the Kusniar's Boarding house for thirty (30) days only and he was evicted in accordance with the agreement that he entered into with the Defendants because of his disruptive behavior.

38.  [That] Mr. Williams has no standing to bring the within civil rights action.

39.   The Plaintiff has admitted that two (2) of the five (5) rooms for boarding tenants were occupied by African Americans. [This includes the one room occupied by Plaintiff.]

Doc. 122 at 9. In this record the Plaintiff testified under oath during his deposition that Randall Rusia uttered racial epithets at him frequently and that his reason for evicting him was based on Williams' race. That evidence is sufficient to raise a question of fact with respect to the issue of whether Randall evicted Williams based on considerations of race. See, e.g., O'Shea v. Yellow Technology Services, Inc., 185 F.3d 1093, 1097 (10th Cir. 1999)("racial epithets are often the basis of racial harassment claims[ ] and may likewise create an inference that racial animus motivated other conduct as well"). Randall argues, however, that there is no genuine issue of fact with respect to this claim because he rented another room to an African-American. That argument lacks merit at the summary judgment phase of this lawsuit when viewed in the context of the purported racial epithets uttered here. Randall Rusia's argument does nothing more than raise an issue of material fact. Consequently, summary

10

judgment should be denied with respect to the civil rights'
causes of actions set out under Sections 1981 and 1982. However,
because the Plaintiff has adduced no competent evidence to
support a conspiracy involving Randall Rusia, summary judgment
should be granted in Randall Rusia's favor with respect to the
Section 1985 claim.

### d) The Landlord-Tenant Act

Randall Rusia next moves for summary judgment on the
Landlord Tenant Act claims. He argues that Williams is not a
tenant but rather he is a boarder under the Pennsylvania
Innkeepers Act. See 37 Pa. Cons. Stat. § 101 *et seq.*, Doc. 122-1
at ¶ 44. He has not, however, established that the Innkeepers Act
is applicable here. Specifically, he has failed to show that his
boarding house constitutes a "lodging establishment" within the
meaning of the Landlord-Tenant Act. See 37 Pa. Cons. Stat. § 102
(definitions of lodging establishment excludes "portions of the
facility which are devoted to persons who have established
permanent residence" and defining "temporary" as "Occupancy or
the right to occupancy of any lodging establishment for less than
30 days or on a day-to-day basis if for more than 30 days."). In
addition, contrary to statements made in Randall Rusia's's Motion
for Summary Judgment, there is evidence in this record which
shows that Williams himself paid for the room  -at least for one
month. Compare Doc. 122-1 at ¶ 45 ("Plaintiff did not pay for the

11

room") with Doc. 121-2 at 58, Randall's Dep. at 18, line 25 and
Doc. 131-2 at 17, Randall's Dep. at 19 lines 1-3. ("Mr. Williams
gave me $125. He gave me his cash first and owed me the $25 . . .
.)." Because the Plaintiff may have paid for one month's rent and
because of the definition of "temporary" in the Innkeepers Act,
Randall Rusia has failed to show that he is entitled to summary
judgment with respect to the Plaintiff's Landlord-Tenant Act
claim. Summary judgment is inappropriate on this claim.

        e) Defamation

    Lastly, Randall Rusia moves for summary judgment on Williams
defamation claim. Doc. 122-1 at ¶¶ 50-58. He points out that
Williams has admitted that there were no witnesses to his alleged
conduct. Doc. 122-1 at ¶ 56; see 42. Pa. Cons. Stat. § 8343. The
Plaintiff did not, in his response, point to any evidence tending
to establish, as is his burden, any defamatory statements made by
Randall Rusia or that such statements were published, i.e.,
communicated to a third party. See, e.g., Elia v. Erie Ins.
Exchange, 634 A.2d 657, 660 (Pa. Super. 1993). As such, Randall
Rusia is entitled to summary judgment with respect to Williams'
defamation claim.

    4) **The Plaintiff's Motion for Summary Judgment**

    It is recommended that the Plaintiff's Motion for Summary
Judgment be denied because he has failed to establish that there
is no material factual dispute with respect to the claims set out

                                12

in his summary judgment motion.

### III.  **CONCLUSION**

In accordance with the Magistrates Act, 28 U.S.C. §
636(b)(1)(B) & (C), and Local Rule 72.1.4 B, the parties are
allowed ten (10) days from the date of service to file written
objections to this report.  Any party opposing the objections
shall have seven (7) days from the date of service of the
objections to respond thereto.  Failure to timely file objections
may constitute a waiver of any appellate rights.

Francis X. Caiazza
Francis X. Caiazza
U.S. Magistrate Judge

Dated: April 3, 2006.

cc:
The Honorable Terrence F. McVerry
United States District Judge

Simon B. John, Esq.
John & John
96 East Main Street
Uniontown, PA 15401

Steven L. Minnich, Esq
Summers, McDonnell, Walsh & Skeel
707 Grant Street
Gulf Tower, Suite 2400
Pittsburgh, PA 15219

Donte Royes Williams - 324530
Eastern Correctional Institution
30420 Revels Neck Road
Westover, MD 2189

13