IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

```
DONTE ROYES WILLIAMS,         )
                              )
         Plaintiff,           )    Civil Action No. 04-299
                              )
   v.                         )    Magistrate Judge Caiazza
                              )
KUSNAIR'S BAR AND             )
TAVERN, et al.,               )
                              )
         Defendants.          )
```

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Having conducted a bench trial in the above-captioned case, the court now enters these findings of fact and conclusions of law. In its resolution, the court will utilize the narrative voice, rather than numbered findings and conclusions. Where any doubt may arise, the undersigned will specify whether the determination is made by the court sitting as finder of fact or as a matter of law.

The arduous factual background in this case is intimately familiar to the parties and the court therefore will restrict its discussions to those facts most germane to its conclusions.

I. **Factual Background**

Having found himself homeless, Donte Williams ("Williams" or "the Plaintiff") sought assistance from the Fayette County Community Action Agency ("the FCCAA"). He was assigned a case-worker, Jan Brogdan ("Brogdan"), and given a list of landlords who had leased to FCCAA participants in the past. On this list

was Kusnair's Bar and Tavern ("the Bar"), owned by Randall Kusnair ("Kusnair" or "the Defendant").

Williams, along with Brogdan, contacted Kusnair concerning the availability of one of the six rental rooms situated above the Bar.  Kusnair agreed to rent a room to Williams and the Plaintiff received his key on July 2, 2001.  This same day, Williams and Kusnair entered into an oral lease agreement, independent from the FCCAA arrangement, whereby monthly rent was set at $150.  Williams paid Kusnair $125 of July's rent and received a receipt.[1]

Three days later, on July 5, 2001, Kusnair met with Brogdan to complete paperwork required by the FCCAA.  At that time, Kusnair signed a rental verification form ("the FCCAA agreement") requiring a monthly rental payment of $150 and a $150 security deposit.  *See* Pl.'s Trial Ex. 1.  He also agreed not to evict Williams until at least thirty days after the FCCAA had issued its check.  *See id.*

Soon thereafter, the relationship between Kusnair and Williams began to deteriorate.  Kusnair received daily complaints from four other tenants concerning excessive noise levels, partying, and Williams' aggressive behavior.  Kusnair attempted to address these complaints, but Williams ignored him.  Kusnair then informed Williams that if his conduct continued unabated he

---

[1]  The receipt, however, showed a payment of $150.  *See* Pl.'s Trial Ex. 4.

would be evicted.

Unfortunately, nothing changed.  Most disturbingly, Williams regularly made threats of bodily harm and even directed death threats towards Kusnair and the other tenants.  On July 14, 2001 Kusnair approached Williams as he was returning to his room with a case of beer.  He inquired about the balance of July's rent, and Williams disregarded him.

The situation worsened on July 25, 2001, when the Plaintiff became upset because his soap was missing from the community bathroom.  A confrontation between the Plaintiff and Kusnair ensued and the incident spilled out into the street, requiring police involvement.  No charges were filed against either party.

Following these instances and motivated by the litany of tenant complaints, Kusnair terminated Williams' lease on August 3, 2001.  Weeks later, the FCCAA issued a $300 check to cover the Plaintiff's security deposit and one month's rent.  *See* Pl. Trial Ex. 3.  Despite Williams' eviction, Kusnair cashed the check.[2]

## II.  Williams' Contract Claim and the Landlord-Tenant Act[3]

Because there is sparse state precedent, this court must predict how the Pennsylvania Supreme Court would rule if

---

[2]  To the extent Kusnair may be liable to the FCCAA for cashing the $300 check, said entity is not a party to this litigation.  Moreover, Williams is not a third party beneficiary under the agreement entered into by Kusnair and the FCCAA.  *See* discussion *infra*.

[3]  While Williams brings his contract and Landlord-Tenant Act claims separately, they are intertwined and will be addressed together.

presented with this factual pattern.  *See Hughes v. Long*, 242 F.3d 121, 128 (3d Cir. 2001).  In making such a prediction, a federal court ordinarily must look to cases from the state's highest court.  *Id*.  However, when the highest court has been silent on the issue, a federal court applying Pennsylvania state law must examine four areas of law: (1) what the Pennsylvania Supreme Court has said in related areas; (2) the decisional law of the Pennsylvania intermediate courts; (3) federal appeals and district court cases interpreting Pennsylvania law; and (4) decisions from other jurisdictions that have discussed the issues before the court.  *Id*.

This court has found a dearth of Pennsylvania law addressing the circumstances under which a landlord may evict a tenant who poses an imminent and immediate threat to others.  Pennsylvania case law, both state and federal, is silent on this issue and the Landlord-Tenant Act does not address grounds for eviction.[4]  Thus, this court will look to other jurisdictions.  *See id*.

This court has found three jurisdictions that permit a landlord to evict a tenant under circumstances similar to those present here.  Connecticut allows for the immediate eviction of tenants posing a "serious nuisance."  Conn. Gen. Stat. § 47a-15.  "Serious nuisance" includes threats of bodily harm made by a

---

[4]  The Landlord-Tenant Act establishes the process by which a landlord may evict a tenant, rather than listing reasons that justify an eviction.  *See* 68 Pa. Cons. Stat. § 250.501 (requiring notice).

tenant with the present ability to inflict such harm. *Id*. Likewise, both Arizona and Missouri allow for the eviction of tenants whose conduct materially affects the health and safety of other tenants. Ariz. Rev. Stat. Ann. § 33-1368; Mo. Ann. Stat. § 441.740.

Here, the fact-finder concludes by a preponderance of the evidence that the Defendant evicted Williams with good cause because he continually directed threats of violence and death to Kusnair and the other tenants. Common sense dictates, and other jurisdictions have held, that landlords are permitted to evict disruptive tenants whose conduct threatens the safety of other occupants. In light of what other jurisdictions have recognized, the undersigned determines that the Pennsylvania Supreme Court would reach the same conclusion.

Next, this court must predict how the Pennsylvania Supreme Court would view Kusnair's eviction of Williams without notice. While there is some state case law and a decision from the Court of Appeals for the Third Circuit addressing the notice issue generally, they provide little guidance here.

The Landlord-Tenant Act of 1951 governs the notice requirements for eviction. 68 Pa. Cons. Stat. § 250.501.[5] Pennsylvania courts are divided on whether the Act must be

---

[5] Williams argues that he was not given notice under the Landlord-Tenant Act. He has made no claims that he did not receive notice under any other provision of law that may otherwise be applicable. Therefore, the court will restrict its discussion to the Landlord-Tenant Act.

utilized when a landlord evicts a tenant for reasons other than the nonpayment of rent.  *Compare Wofford v. Vavreck*, 22 Pa. D. & C.3d 444, 449 (Pa. Com. Pl. 1981) (Pennsylvania legislature did not eliminate self-help evictions) *with Lenair v. Campbell*, 31 Pa. D. & C.3d 237, 241 (Pa. Com. Pl. 1984) ("self-help eviction is not a remedy under any circumstances").  The Third Circuit Court has confirmed the uncertainty in the law.  *See Williams v. Guzzardi*, 875 F.2d 46, 53 n.13 (3d Cir. 1989) (it is unclear whether self-help remains an available remedy under Pennsylvania law).

At least in these circumstances, the analysis in *Wofford* is more convincing.  Requiring the continued residency of a tenant who poses an imminent and immediate threat to others pending compliance with the strict notice requirements of the Landlord-Tenant Act violates the basic tenets of common sense.  Consequently, this court believes the Pennsylvania Supreme Court would allow a landlord to use self-help to promptly evict a tenant who poses an imminent and immediate threat to the landlord and/or other tenants, the notice provisions of the Landlord-Tenant Act notwithstanding.[6]

---

[6] Even if notice was required under these circumstances, the court as fact-finder concludes that Williams has failed to prove any injury as a result of Kusnair's failure to provide notice.  Consequently, no damages would be awarded in any event.

Despite his behavior, Williams argues that Kusnair breached the FCCAA agreement by evicting him before September 29, 2001 -- thirty days after the FCCAA issued its check.  However, the court finds as a matter of law that Williams was not a third party beneficiary of the FCCAA agreement and, therefore, he cannot enforce it.

The court first finds that the FCCAA agreement, consummated three days after Williams and Kusnair entered their private oral lease agreement and after Williams occupied the premises, did not create a new lease between the FCCAA and Kusnair for the benefit of Williams.

Before occupying the premises Williams had been evicted from his prior living quarters and was homeless.  He then contacted the FCCAA, a community action agency that temporarily assists individuals who cannot afford rental payments.  The FCCAA agreed to pay Williams' rent and Kusnair agreed not to evict Williams for thirty days.  Based on these facts, the court finds that the FCCAA agreement guaranteed Kusnair's rental payment and was intended for his benefit, rather than for the benefit of Williams.  Conversely, Kusnair's agreement not to evict Williams benefitted the FCCAA by providing it fair consideration for its investment.  Based on these findings, Williams was not a third party beneficiary, as neither Kusnair nor the FCCAA expressed any intent to benefit him.  *See Scarpitti v. Weborg*, 609 A.2d 147,

150 (Pa. 1992) (a third party may only enforce a contract if the contracting parties express an intent to benefit the third party).[7]

### III. <u>Williams Does Not Have Standing Under the Consumer Protection Law</u>

The Consumer Protection Law ("CPL") protects only those who have purchased or leased goods or services. *Katz v. Aetna Cas. & Surety Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (citing Pa. Cons. Stat. § 201-9.2(a)). Williams was not a party to the FCCAA agreement, and it did not create any contractual relationship between Kusnair and himself. *See Schwarzwaelder v. Fox*, 895 A.2d 614, 620 (Pa. Super. 2006) (the CPL did not apply because there was no contractual relationship between the plaintiff and the defendant). Even had Williams collaterally benefitted from the FCCAA agreement, this would not have placed him within the protections of the CPL. *See Gemini Physical Therapy & Rehab., Inc., v. State Farm Mut. Auto. Ins. Co.*, 40 F.3d 63, 65 (3d Cir. 1994) (the CPL does not protect third parties who benefit from a purchase). Therefore, Williams does not have standing to bring suit under the CPL. *See Schwarzwaelder*, 895 A.2d at 620; *Gemini*,

---

[7] Even assuming Williams was an intended third party beneficiary, the agreement only would have become effective upon Kusnair's receipt of his consideration, namely the FCCAA's $300 check. By that time, the Plaintiff already had been justifiably evicted based on his threatening behavior. *See* discussion *supra*. Under the circumstances, the agreement never became operative and, at best, the FCCAA would have a claim for recoupment of its $300. As explained above, that entity is not a party to this litigation, and under no reading of the law is Williams entitled to the proceeds.

40 F.3d at 65-66; and *Katz*, 972 F.2d at 55, 57.

### IV. **Williams' Discrimination Claims**

Williams' claims under 42 U.S.C. § 1981, 42 U.S.C. § 1982, and the Fair Housing Act as Amended ("FHAA") require a similar analysis, the only difference being that Sections 1981 and 1982 require proof of intentional discrimination, while an FHAA claim only requires that discrimination played a role in the Defendant's decision to evict. *See Chauhan v. M. Alfieri Co., Inc.*, 897 F.3d 123, 126 (3d Cir. 1990) ("A successful section 1981 claim requires proof of intentional discrimination."); *Alexander v. Riga*, 208 F.3d 419, 428 (3d Cir. 2000) (FHAA does not require legal causation, only that discrimination occurred). In any event, all of the claims require that discrimination somehow be connected to the eviction. *See generally Alexander*, 208 F.3d at 419; *Chauhan*, 897 F.3d at 123; *Robinson v. 12 Lofts Realty, Inc.*, 610 F.2d 1032 (2d Cir. 1979).

As fact-finder, the court determines that Williams was evicted because he posed an imminent and immediate threat to the health and safety of other tenants and Kusnair. The Plaintiff has offered no credible evidence showing that discrimination played any role in the Defendant's decision, and all of the Plaintiff's discrimination claims fail under the preponderance of

the evidence standard.[8]

**V.     Conclusion**

For the reasons stated above, judgment will be entered in favor of the Defendant.

THESE FINDINGS AND CONCLUSIONS ARE SO ENTERED.


July 13, 2007                                      _Francis X. Caiazza_
                                                    Francis X. Caiazza
                                                    U.S. Magistrate Judge


cc:

Simon B. John, Esq.   (via email)

Donte Royes Williams   (via first-class U.S. Mail)
338201
E.C.I.
30420 Revells Neck Rd.
Westover, MD  21890

---

[8]  Although there was testimony claiming that racial epithets were made by both parties, the court finds by a preponderance of the evidence that, even assuming they occurred, they played no role in the Plaintiff's eviction.